# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAWRENCE H. GRESS | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 17-cv-8067 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| REGIONAL TRANSPORTATION | ) |
| AUTHORITY, an Illinois Municipal | ) |
| Corporation; PACE SUBURBAN BUS | ) |
| SERVICE, a division of the Regional | ) |
| Transportation Authority, SUSAN | ) |
| RUSHING ROCKY DONAHUE, JANIKA | ) |
| A. SCAIFE MILLER and THOMAS | ) |
| J. ROSS, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff, Lawrence H. Gress raises eight claims of unlawful employment practices against Defendants Regional Transportation Authority ("RTA") and Pace Suburban Bus Service ("PACE"), as well as individuals Susan Rushing, Rocky Donahue, Janika A. Scaife Miller, and Thomas J. Ross. Defendants jointly file a motion to dismiss all claims asserted against RTA as well as to dismiss Counts II, V(a), V(b), VI, and VII pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants also move to strike portions of Gress' Complaint pursuant to Rule 12(f)(2). For the reasons stated below, Defendants' Motion to Dismiss is granted. Defendant's Motion to Strike is granted in part and denied in part.

**Background**

The facts to follow are presumed true for the purpose of deciding this motion. Gress is a Caucasian over the age of 40. He is not of Hispanic origin. RTA is a local governmental entity serving as the financial and oversight body for three transportation divisions, to include PACE. PACE's mission is to provide bus transportation for the Northeastern part of Illinois. At all times relevant to Gress' claims, the individual defendants were employed by PACE. Miller was a Human

Resources Specialist; Rushing was the Manager of Community Relations; Donahue was the Deputy Executive Director of External Relations; and Ross was the Executive Director.

On March 18, 2016, PACE posted a job listing soliciting applications for a Community Relations Representative ("CRR") at the Arlington Heights Corporate Headquarters. The posting indicated that PACE would select candidates who possessed the best qualifications in accordance with standard hiring procedures and the job description. In April 2016, Gress applied to the position believing his qualifications aptly fit the description given that he had a relevant degree and at least 20 years of transit and government-related experience. Gress previously worked for RTA from 1993 to 2005 and left on positive terms after being recruited by an RTA/PACE contractor. Although Gress was not fluent in Spanish, the job listing said that it was a preferred, but not required, skill.

From April 29 to May 11, 2016, Rushing and Miller conducted seven preliminary interviews for the CRR position. Two candidates were called back for second round interviews with Rushing, Miller, and Donahue. Gress contends that Rushing reviewed and ranked his application amongst those "most worthy"; however, he was not extended an interview during the preliminary round of interviews. On June 15, 2016, Rushing and Miller did a preliminary interview with Gress for the CRR position. They discussed his accomplishments, but they did not inquire into his Spanish language ability. Soon after his interview, Gress received a letter from Miller indicating that, despite his interesting work background, PACE decided to hire another candidate. Gress later learned that PACE hired Martin A. Sandoval II, a Hispanic male that graduated with a Psychology degree in 2012 and was pursuing a master's degree in Social Work. Sandoval is younger than Gress. While Sandoval had been working in a community-relations-type role since 2012, he had no prior transit or government-related experience. Sandoval was allegedly fluent in Spanish, but it is unclear whether PACE assessed his language capacity before he was hired. Gress also discovered that Sandoval was

2

the son of a State Senator. The Senate Transportation Committee exercises substantial oversight and control over the operations and funding of RTA and PACE.

On November 3, 2016, Gress filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights alleging that PACE violated various employment statutes by denying him employment on account of his age and race. In PACE's position statement to the EEOC, it asserted that the decision not to hire Gress was made without regard to any illicit factor and was based on the fact that Gress' interview performance, experience, and salary expectations "compared unfavorably" to those of Sandoval. They also justified his hiring by citing Sandoval's Spanish fluency. The EEOC issued a Notice of Right to Sue on August 15, 2017. Gress brought the instant suit on November 11, 2017.

**Motion to Dismiss**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations to state a facially plausible claim for relief that goes beyond mere speculation. *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009). When reviewing a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Pisciota v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). An allegation is facially sufficient when the plaintiff pleads factual content that allows a court to infer that a defendant is liable for the misconduct alleged and the plaintiff is plausibly entitled to some relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n. 14 (2007); *Ashcroft*, 556 U.S. at 678.

**Analysis**

*Title VII and the ADEA*

Defendants argue that RTA, as a party, should be dismissed from Gress' Title VII and ADEA claims since Gress did not file an EEOC charge against RTA, specifically.

The law is clear, as both sides concede in their pleadings, that Title VII and the ADEA actions may not be brought against a party without previously filing a charge with the EEOC and obtaining a right-to-sue letter. 42 U.S.C. §2000e-5(f); 29 U.S.C. § 626(c)-(d). This process not only provides parties with notice of the alleged violation, but it also affords the offending party the opportunity for conciliation and voluntary compliance. *Metz v. Joe Rizza Imps., Inc.*, 700 F. Supp. 2d 983, 989 (N.D. Ill. 2010)(Castillo, J.). The only exception to this general rule exists where an unnamed party has been given adequate notice of the EEOC charge and the opportunity to participate in conciliation proceedings aimed at voluntary compliance. *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981).

The Complaint does not indicate that RTA was named as a Respondent in Gress' EEOC charge or that Gress received a right-to-sue latter permitting him to pursue a claim against RTA in federal court. Gress relies on the *Eggleston* exception, arguing that RTA's supervisory authority over PACE and its history of discriminatory hiring should have put it on notice of the EEOC charge and potential liability. Notwithstanding Gress' contention, none of the allegations in the Complaint indicate that RTA had any actual notice of the charge against PACE. The allegations also do not support that RTA had knowledge of its own alleged involvement or a meaningful opportunity to participate in the conciliation process simply because it was a parent agency to PACE. Accordingly, the exception does not apply here, and Counts I and III are dismissed as to RTA only. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989)(finding that the parent company

4

was properly dismissed because it did not have notice of the charge against it or the opportunity to participate in the EEOC process).

*Title VI*

Defendants contend that Count II fails to allege an actionable claim of discrimination under Title VI because Gress is not a primary beneficiary of RTA and PACE's federal funding.

Title VI of the Civil Rights Act of 1964 prohibits federally funded entities from discriminating in the programs and activities receiving the financial assistance on the basis of race, color, or national origin. 42 U.S.C. § 2000d. This provision only applies judicial remedies for employment discrimination where 1) employment is the primary objective of the federal aid, or 2) discrimination in employment causes discrimination against those considered the primary beneficiaries of the federal aid. *Ahern v. Bd. of Educ.*, 133 F.3d 975, 978 (7th Cir. 1998).

Gress concedes that the RTA and PACE's financial aid is directed towards the provision of public transportation for the benefit of the riders. Thus, he cannot claim that he is a primary beneficiary as an applicant for employment. *Miller v. Phelan,* 845 F. Supp. 1201, 1207 (N.D. Ill. 2002)(Aspen, J.). Alternatively, Gress argues that RTA and PACE's discriminatory employment practices adversely affected the primary aid beneficiaries because unqualified employees degrade services for the riders. This argument is vague and undermines the plausibility of Count II because it does not allege whether Sandoval was so unqualified that he could not adequately perform the job, or how the services will actually be degraded. While it is this Court's job to "consider whether a plaintiff could prevail under any legal theory or set of facts," District Courts are not required to engage in the alchemy of inventing legal arguments for litigants when their briefs only offer vague conclusions and insufficient legal support. *Cty. of McHenry v. Ins. Co. of the West.*, 438 F.3d 813, 818 (7th Cir. 2006); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013).

Considering Gress' tenuous assertions, Count II fails to adequately state a cause of action under Title VI, so Defendants' motion to dismiss the claim is granted. *Miller*, 845 F. Supp. at 1207.

*Section 1983[1] and Illinois Civil Conspiracy*

Defendants argue that Count V(a) should be dismissed because the claim is precluded by the intracorporate conspiracy doctrine.

Section 1983 provides redress to parties deprived of constitutional rights or privileges by a person acting under the color of the law and abusing their position. 42 U.S.C. § 1983. A conspiracy claim under § 1983 requires plaintiff to show: "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivation of those rights in the form of over acts in the furtherance of the agreement." *Shaw v. Klinkhamer*, No. 03 C 6748, 2005 U.S. Dist. LEXIS 14483, at *16 (N.D. Ill. July 1, 2005)(Lefkow, J.)(citing *Scherer v. Balkema*, 840 F.2d 437 at 442 (7th Cir. 1988), cert. denied 486 U.S. 1043 (1988)).

The intracorporate conspiracy doctrine provides that a "conspiracy cannot exist solely between members of the same entity." *Beese v. Todd*, 35 F. App'x 241, 243 (7th Cir. 2002)(citing *Payton v. Rush-Presbyterean-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999)).[2] It was created to shield employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory, and its applicability depends on if the alleged conduct was performed

---

[1] Gress alleges two claims under Count V. The court will refer to the 42 U.S.C. § 1983 conspiracy claim as Count V(a) and the Regional Transportation Authority Act § 2.14 claim as Count V(b).
[2] While the Seventh Circuit has applied the intracorporate conspiracy doctrine to §1985 claims against government entities, it has yet to comment definitively on the doctrine's applicability to §1983 claims. Several judges in this district have extended the doctrine to §1983 employment discrimination claims. *See Freelain v. Vill. of Oak Park*, No. 17 C 6592, 2018 U.S. Dist. LEXIS 58034, at *21 (N.D. Ill. Apr. 5, 2018)(Gettleman, J.); *Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 02 C 9303, 2003 U.S. Dist. LEXIS 16403, at *15 (N.D. Ill. Sep. 18, 2003)(Gottschall, J.); *Simonsen v. Bd. of Educ.*, Case No. 01 C 3081, 2002 U.S. Dist. LEXIS 2361, at *51 (N.D. Ill. Feb. 13, 2002)(Aspen, J.); *Perrott v. United States*, No. 96 C 4347, 2001 U.S. Dist. LEXIS 317, at *8 (N.D. Ill. Jan. 4, 2001)(Darrah, J.). Courts have, however, apply the doctrine to § 1983 cases involving police misconduct as such acts are not effectuated in pursuit of the entity's lawful business. Newsome v. James, No. 96 C 7680, 2000 U.S. Dist. LEXIS 5678, at *46 (N.D. Ill. Apr. 25, 2000)(Plunkett, J.).

within the scope of the employees' official duties. *Tabor v. City of Chi.*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998)(Gettleman, J.). Courts have found that the doctrine does not apply where the employees are shown to have been motivated solely by personal bias or where they are part of a broader pattern of conspiracy. *Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 02 C 9303, 2003 U.S. Dist. LEXIS 16403, at *14 (N.D. Ill. Sep. 18, 2003)(Gottschall, J.)(citing *Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 4 F.3d 465, 471 (7th Cir. 1993).

The application of the intracorporate conspiracy doctrine is proper here as all of the parties' work within PACE and were acting in their official capacity as to the allegedly unlawful hiring practice. Plaintiff has failed to plead an exception to the doctrine. Further, the Complaint does not point to how the Miller, Rushing, Ross, and Donahue were personally involved in the allegedly unlawful hiring practices from decades prior or were so motivated by self-interest that their conduct would fall outside of the scope of their employment. Interviewing and evaluating candidates is the type of routine, collaborative business decision that is squarely contemplated under the intracorporate conspiracy doctrine. Accordingly, the doctrine bars Gress from claiming that the collaborative decision to not hire him was a conspiracy under §1983. Count V(a) is dismissed.

Given the above analysis, it follows that Gress' claim for Illinois Civil Conspiracy should also fail as it is barred by the intracorporate conspiracy doctrine. Defendant's motion to dismiss Count VII is also granted.

*Section 2.14 of the RTA Act*

Defendants contend that Count V(b) fails because Section 2.14 of the Regional Transportation Authority Act ("RTA Act") does not provide a statutory private right of action for discrimination against the PACE individual employees, and it is duplicative of the existing claims under the Illinois Human Rights Act ("IHRA").

7

Section 2.14 states that "[n]o unlawful discrimination, as defined and prohibited in the Illinois Human Rights Act [775 ILCS 5/1-101 et seq.], shall be made in any term or aspect of employment *nor* shall there be discrimination based upon political reasons or factors. 70 ILCS 3615/2.14 (emphasis added). The Court reads this as two separate and distinct prohibitions. Section 2.14 clearly prescribes IHRA as the sole avenue to obtain relief for any unlawful discrimination caused by the "Authority" (defined as the Regional Transportation Authority). *Id.* The statute does not separately articulate a route for pursuing a political discrimination claim outside of what might be available via IHRA. The Court declines to imply a private right of action where this statute does not expressly provide a remedy. *Carmichael v. Union Pac. R.R. Co.*, 2018 IL App (1st) 170075, ¶ 16. Such judicial discretion is not appropriate here. RTA Act is silent on whether a private right of action for a political discrimination claim exists under the statute, and Gress has offered this Court no additional framework for analyzing his claim. Gress' only basis for political discrimination is that Sandoval had a close political tie that could tangentially be advantageous to PACE. He has not alleged facts suggesting that this fact was seminal to Sandoval's hiring or that Gress' own political affiliations were disfavored in the process. This Section 2.14 claim is specious on its face and would require the Court to craft arguments to create a claim that is simply not evident in the Complaint. Further, even if this were a viable claim, the Court finds that Gress raised it under the incorrect provision as the RTA Act provides an independent section prohibiting PACE from engaging in discriminatory employment practices. 70 Ill. Comp. Stat. An. 3615/3A.05.

Count V(b) is deficient and fails to state a claim. Consequently, Defendants' motion to dismiss is granted.

*Intentional Interference with Prospective Economic Advantage*

Defendants argue that Gress' claim for intentional interference with prospective economic advantage is inadequate because he failed to allege a reasonable expectation of employment or that the individual defendants' interference was directed at a third party.

Under Illinois law, a claim for intentional interference with prospective economic advantage requires a showing of 1) a reasonable expectation of entering into a valid business relationship; 2) the defendant's knowledge of the expectancy; 3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy; and 4) damage to the plaintiff resulting from the defendant's interference. *Aslam v. Bd. of Educ. of Chi.*, No. 06-4920, 2008 U.S. Dist. LEXIS 83798, at *21 (N.D. Ill. Aug. 25, 2008)(Lefkow, J.)(*Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299, 172 Ill. 2d 399, 406-07, 217 Ill. Dec. 720 (1996)). While courts review the expectancy element situationally, the hope of receiving a job offer is generally not considered sufficient to constitute a reasonable expectation of employment. *Id.* Courts have found that when an employer makes verbal promises to hire the candidate, the expectation created goes beyond the plaintiff's subjective belief and is sufficient to satisfy the first element. *O'Driscoll v. Argosy Univ.*, No. 12 C 10164, 2014 U.S. Dist. LEXIS 23201, at *16 (N.D. Ill. Feb. 25, 2014)(St. Eve, J.).

Plaintiff provides a lengthy description of the experiences that he contends made him the most qualified candidate or more qualified than Sandoval in order to prove that he had a reasonable expectancy of employment. The problem is that his allegation is premised on the assumption that the decision to hire is solely based on the best qualifications. While an offer in-hand is not necessarily required to show a reasonable expectancy, Gress did not provide any facts to show that he was entitled to the CRR job beyond his subjective impression. Gress does not allege that PACE believed he was the best qualified, that they hired for this position on qualifications alone, or that they intended to pick him from the pool of candidates. In fact, PACE's EEOC response indicated

9

that Gress' application as a whole was perceived unfavorably as compared to Sandoval. Accordingly, the Court finds that Count VI does not adequately plead the first element, reasonable expectancy, and so, it must be dismissed.

The Court also finds that the claim fails on the third element. An intentional interference with prospective economic advantage claim is typically brought in a situation where the defendant interfered with a third-party business prospect, not when an employer or agent makes a decision that is adverse to the plaintiff. *F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007). Here, the Complaint alleges that "PACE, through its employees Rushing, Donahue, Miller and Ross, discriminated against Gress" by denying him employment. Complaint at ¶ 110. The named individuals were the actual decision-makers within in the entity that Gress contends he was denied access. He did not identify any conduct influencing a third party to reject him. In fact, the Complaint affirmed that the individuals who interfered were agents of the entity providing the potential economic opportunity. Accordingly, his claim fails. *McCoy v. Iberdrola Renewables*, Inc., 760 F.3d 674, 686 (7th Cir. 2014).

As two material elements have not been properly alleged, Defendants' motion to dismiss count VI is granted.

**Motion to Strike**

Defendants also move to strike Paragraphs 85-90, 92, and 116-118 of Gress' Complaint because the allegations are wholly unrelated to the incident in question.

A court has discretion to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f); *FDIC v. Giannoulias*, No. 12 C 1665, 2014 U.S. Dist. LEXIS 93630, at *3 (N.D. Ill. July 10, 2014)(Grady, J.). Pleadings will only be stricken if they are insufficient as a matter of law, meaning they bear no relation to the controversy or would prejudice the movant. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Islamic Ctr. of*

*W. Suburbs v. Cty. of Dupage*, Civil Action No. 12 C 6132, 2012 U.S. Dist. LEXIS 179042, at *8 (N.D. Ill. Dec. 18, 2012)(Conlon, J.). The moving party must show that the challenged allegations are so remote to the plaintiff's claim that they lack merit and are unduly prejudicial. *Choi v. Bd. of Trs. of the Univ. of Ill.*, No. 16 C 11627, 2017 U.S. Dist. LEXIS 121800, at *15 (N.D. Ill. Aug. 2, 2017)(Ellis, J.).

This Court finds that paragraphs 85-89 introduce Gress' personal knowledge of historical discrimination and may provide context for his allegation that there was a culture of hiring less qualified persons for political gain at PACE. *Daniels v. UPS, Inc.*, No. 02 C 9068, 2004 U.S. Dist. LEXIS 4658, at *8 (N.D. Ill. Mar. 19, 2004)(Guzman, J.). As these sections are relevant and not prejudicial, the motion to strike is denied as to paragraphs 85-89. The Court finds that paragraphs 90, 92, and 116-118, however, allude to unrelated conduct or infuse unsubstantiated opinions that will serve to confuse the issues. Consequently, they are stricken.

Defendants' motion to strike is denied in part, as to paragraphs 85-89, and granted in part as to paragraphs 90, 92, and 116-118.

**Conclusion**

Based on the foregoing, Defendant's Motion to Dismiss Counts I and III with respect to RTA, as well as Count II, V(a), V(b), VI, and VII is granted. Defendants Motion to Strike is granted in part and denied in part.

IT IS SO ORDERED.

ENTERED:  SHARON JOHNSON COLEMAN
United States District Court Judge

Dated: 8/15/2018